**LAW OFFICE OF CLARK OVRUCHESKY**
Clark Ovruchesky, Esq. (SBN: 301844)
co@colawcalifornia.com
750 B. Street, Suite 3300
San Diego, California 92101
Telephone: (619) 356-8960
Facsimile: (619) 330-7610

**SHANNER & ASSOCIATES**
Thomas K. Shanner, Esq. (SBN: 218515)
toby@shannerlaw.com
7777 Alvarado Road, Suite 307
La Mesa, CA 91942
Telephone: (619) 232-3057
Facsimile: (619) 638-8130

*Attorneys for Plaintiff,*
Timothy Broom

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TIMOTHY BROOM,** | **Case No.:** '17CV548  BTM BLM |
| **Plaintiff,** | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:** |
| **v.** | **1.) THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, ET SEQ.; AND** |
| **FARMERS AND MERCHANTS BANK OF LONG BEACH AND EXPERIAN INFORMATION SOLUTIONS, INC.,** | **2.) CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE § 1785.1, ET SEQ.** |
| **Defendants.** | **JURY TRIAL DEMANDED** |

///
///
///
///
///

*LAW OFFICE OF CLARK OVRUCHESKY*
*750 B. STREET, SUITE 3300*
*SAN DIEGO, CA 92101*

### INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. There exists today in the United States a pervasive and fundamental misunderstanding about the long term impact filing a consumer bankruptcy has on a consumer's credit worthiness. Specifically, many consumers believe that because a bankruptcy can be reported on their credit report for ten years their credit worthiness will be ruined for the same length of time. This is not true.

3. The *majority* of consumer debtors who actually file consumer bankruptcy do so to *__raise__* their credit score and remedy their poor credit worthiness.

4. It is entirely possible for consumer debtors to have over a 700 Fico Score within as little as 12 months after filing a consumer bankruptcy (Chapter 7 or Chapter 13).

///

///

///

///

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

5.  Plaintiff **TIMOTHY BROOM** ("Plaintiff"), through his attorneys, brings this lawsuit to challenge the actions of Defendants **FARMERS AND MERCHANTS BANK OF LONG BEACH ("F&M", "Furnisher-Defendant", or "Defendants") and EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian", the "Bureau", "CRA", or "Defendants"),** with regard to Defendants' reporting of erroneous negative and derogatory reports to Plaintiff's credit report, as that term is defined by 15 U.S.C. § 1681a(g); Defendants' willful and negligent failure to properly investigate the repeated disputes of Plaintiff concerning the inaccurate data Defendants are reporting in Plaintiff's file, and Defendants' failure to correct such, which Defendants knew or should have known was erroneous and which caused Plaintiff damages.

6.  Plaintiff makes these allegations on information and belief, with the exception of allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

7.  While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

8.  Unless otherwise stated, all the conduct engaged in by Defendants occurred in California.

9.  Any violations by Defendants were knowing and intentional, and that Defendants did not maintain procedures reasonably adapted to avoid any such violation.

10. Unless otherwise indicated, the use of any Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendants named.

///

///

---

### JURISDICTION AND VENUE

11. Jurisdiction of this Court arises pursuant to 28 U.S.C. §1331; 15 U.S.C. § 1681p; and, 28 U.S.C. § 1367 for supplemental state law claims.

12. This action arises out of Defendants' violations of (i) the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. ("FCRA") and (ii) the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code §§ 1785.1. et seq. ("CCCRAA").

13. The Court has personal jurisdiction over Defendants as Defendants conduct business within the State of California and have purposefully availed themselves of the laws and markets of the State of California and this district.

14. Venue is proper in the United States District Court, Southern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in the County of San Diego, State of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business within this judicial district at all times relevant.

### PARTIES

15. Plaintiff is a natural person who resides in the City of Oceanside, County of San Diego, in the State of California.  In addition, Plaintiff is a "consumer" as that term is defined by: Cal. Civ. Code § 1785.3(b) and 15 U.S.C. § 1681a(c).

16. Defendant F&M is a corporation, whose primary corporate address is in the City of Long Beach, in the State of California.

17. Defendant Experian is a corporation whose primary corporate address is in the City of Costa Mesa, in the State of California.

18. F&M ("Furnisher-Defendant") is a furnisher of information as contemplated by FCRA sections 1681s-2(a) & (b), which regularly and in the ordinary course of business furnish information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

19. Plaintiff is informed and believes, and thereon alleges, that F&M, in the ordinary course of business, regularly, on behalf of themselves or others, engage in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and are therefore "debt collectors" as that term is defined by California Civil Code § 1788.2(c).

20. Defendant Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

21. The causes of action herein also pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(c), in that inaccurate credit information was furnished by F&M to "consumer reporting agencies," as that term is defined by Cal. Civ. Code § 1785.3(d), regarding specific transactions and/or experiences pertaining to Plaintiff and Plaintiff's credit worthiness, credit standing, and credit capacity. Such credit information was used or was expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

## GENERAL CREDIT REPORTING INDUSTRY ALLEGATIONS

22. Plaintiff alleges that F&M's Debt was included, scheduled, and discharged in Plaintiff's Chapter 7 Bankruptcy.

23. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

24. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendants reported in accordance with the recognized industry standard.

///

///

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

25.  Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's ability to reorganize and repair Plaintiff's FICO Score.

26.  In the alternative, Plaintiff alleges that each and every Defendants' actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### a. FICO

27.  FICO Inc. ("FICO") is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

28.  The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

29.  A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

30.  Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

31.  Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

32.  There are 28 FICO Scores that are commonly used by lenders.

33.  A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies ("CRAs").

34.  The three largest CRAs are Equifax, Experian, and TransUnion.

///

///

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

35. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

36. There are five key factors that a FICO Score considers: 1) Payment history; 2) Amount of Debt; 3) Length of Credit History; 4) New Credit; and 5) Credit Mix.

37. Each of the five factors is weighted differently by FICO.

38. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

39. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score. Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

40. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

41. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

42. FICO Score's are entirely dependent upon information provided by Data Furnishers ("DFs") to CRAs.

///

///

///

///

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

43. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both "Chapters" have the same level of severity with respect to their FICO Score and for both, FICO uses the FILING DATE to determine how long ago the bankruptcy took place.

### b. Metro 2

44. The Consumer Data Industry Association ("CDIA") is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

45. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumers' credit history.

46. The Consumer Data Industry Association's ("CDIA") Metro 2 format is *The* credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.[1]

47. Therefore, the credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

48. The CDIA is *The* expert on accurate credit reporting. In support of this allegation, Plaintiff avers the following:

    a. The CDIA offers an FCRA certificate program for all CRAs

    b. The CDIA offers an FCRA awareness program for all CRAs.

    c. The CDIA offers an FCRA certificate program for DFs.

    d. The CDIA offers an FCRA awareness program for DFs.

---

[1] *See* Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at: http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and TransUnion.

g. The CDIA developed a credit reporting resource guide for accurately reporting credit.

49. The CDIA's Metro 2 is accepted by all CRAs.

50. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's Credit Reporting Resource Guide ("CRRG").

51. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

52. The CRRG is not readily available to the public. It can be purchased online for approximately $229.45.

53. Even if a buyer is ready and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

54. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

55. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

56. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower, a consumer will be considered a higher credit risk, resulting in less favorable lending terms.

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

### c. e-Oscar

57. E-OSCAR is the web based Metro 2 compliant system developed by the CRAs that enables DFs and CRAs to create and respond to consumer credit disputes.

58. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-Oscar to the DF.

59. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file, e.g. "Account Type - 07" (07 in Metro 2 refers to a Charge Account).

### d. Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator ("CII")

60. When a consumer files bankruptcy, certain credit reporting industry standards exist.

61. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

62. The Consumer Information Indicator ("CII") is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

63. Under Metro 2, the CII must be reported only on the consumer to whom the information applies.

64. It is the credit reporting industry standard to report a very specific CII upon the occurrence of critical events during a consumer bankruptcy, such as the filing of the bankruptcy and the bankruptcy discharge.

65. In a consumer bankruptcy context, CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

66. CII Metro 2 Code "Z" indicated that a bankruptcy petition has been filed but the chapter is undesignated/unknown.

67. CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

68. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

69. The lack of an accurate reporting of the CII field makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

70. The lack of an accurate reporting of the CII field also suggests that creditors are free to collect against a consumer per their pre-bankruptcy contract terms, which is inaccurate and materially misleading due to the effect of the bankruptcy orders, such as the automatic stay of section 362 of Title 11, that exist to prevent post-petition collection activity, and the discharge order which enjoins post-discharge collection upon any *in personam* liability for a claim.

71. Accordingly, failure to report the correct CII indicator would prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

72. Under the FCRA, a bankruptcy can be reported for ten years.

73. The ten-year rule for reporting runs from the date the bankruptcy was *filed*.

74. A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.

75. The more time that has passed since the filing of the bankruptcy, the less negative impact the bankruptcy will have on a consumer's FICO Score.

76. Failure to reference the bankruptcy filing and/or discharge in the CII field and/or the correct petition date shall result in a lower FICO Score resulting in those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

77. As explained in more detail below, Defendants failed to reference the bankruptcy filing and discharge in the CII status field in Plaintiff's Credit Reports in respect to a consumer account successfully discharged through Plaintiff's Chapter 7 Bankruptcy.

///

///

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

78. Instead, Defendants reported that the *current* (pay) status of the debts were delinquent, "Charged Off", i.e. still legally collectable, or otherwise still legally owed as opposed to "Discharged in Bankruptcy" with a $0 balance.

79. The failure to report the correct status of "Discharged in Bankruptcy" inaccurately and misleadingly suggested that Plaintiff still has a personal legal liability to pay the alleged Debt, which is the opposite effect of receiving a Chapter 7 bankruptcy discharge.

## GENERAL ALLEGATIONS

80. At all times relevant to this matter, Plaintiff was an individual residing within the State of California.

81. Furthermore, Defendants conducted business within the State of California at all times relevant.

82. On or about May 24, 2013, Plaintiff filed for a Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of California in San Diego. Plaintiff's case was assigned Case Number 13-bk-05425 (the "Bankruptcy").[2]

83. The obligations ("Debt") to F&M were included in the Bankruptcy.

84. As a result of a recent major class action settlement, Experian, Equifax, and TransUnion have agreed to treat all pre-bankruptcy debts as discharged with a $0 balance, unless furnishers provide information showing that a debt was excludable from discharge.[3]

85. F&M received a copy and notice of the Bankruptcy filing on or about May 24, 2013 through a Court Certificate of Mailing with Service by the Bankruptcy Noticing Center.

---

[2] The District Court has discretion to take judicial notice of the documents electronically filed in the bankruptcy case. *See*, *Atwood v. Chase Manahttan Mortg. Co.* (*In re Atwood*), 293 B.R. 227, 233 n.9 (B.A.P. 9th Cir.2003).

[3] *White v. Experian Info Solutions, Inc.*, Case No. CV 05-01070 (C.D. Cal. Aug. 19, 2008) (lead case number).

86. Further, after the Bankruptcy is filed, it is illegal and inaccurate for creditors to report any post-Bankruptcy derogatory collection information, which would be inconsistent with the Bankruptcy Orders entered by the Bankruptcy Court, including the initial Petition for Relief for Bankruptcy protection, the automatic stay, and the Discharge Order (collectively the "Bankruptcy Orders).

87. However, on or about August 10, 2013, F&M filed an Adversary Complaint Action against Plaintiff in an effort to have their Debt ordered to be "non dischargeable" pursuant to 11 U.S.C. § 523 *et seq.* under Case Number 13-90207-CL in the United States Bankruptcy Court for the Southern District of California in San Diego (the "Adversary Action").

88. According to F&M's Adversary Action, Plaintiff incurred a balance due and owing on his account with F&M of $10,140.39, including interest as of the date of the filing of the Bankruptcy.

89. On or about January 10, 2014, the Parties filed a Stipulation for Entry of Judgment, which reflected that the Parties reached a full settlement of the Adversary Action. Specifically, the Parties agreed that Plaintiff would pay F&M the non-dischargeable sum of $5,000 in exchange for F&M dismissing the Adversary Action.

90. On or about January 13, 2014, the Bankruptcy Court approved the Parties' Stipulation for Entry of Judgment.

91. In other words, Plaintiff's *non-discharged* obligation to F&M was reduced by Court Order to $5,000.

92. Accordingly, on or about February 25, 2014 the Bankruptcy Court closed the adversary proceeding.

93. Under the terms of the settlement, Plaintiff paid F&M $1,000 by December 31, 2013 and the balance of $4,000 in installments of at least $100 per month commencing January 30, 2014, without interest, until the balance of $4,000 was paid in full (the "Settlement")

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

94. Finally, on October 17, 2016, F&M filed a Notice of Satisfaction of Judgment, which reflected that Plaintiff paid off the $5,000 non-dischargeable Settlement to F&M.

95. Plaintiff's Bankruptcy was successfully discharged on August 21, 2013.

96. Accordingly, any otherwise dischargeable Debt to F&M above the $5,000 Settlement paid by Plaintiff to F&M was discharged through the Bankruptcy and F&M received notice of the successful discharge from the Bankruptcy Noticing Center on or about August 22, 2013.

97. Again, after the Bankruptcy is filed, it is illegal and inaccurate for creditors to report any post-Bankruptcy derogatory collection information, which would be inconsistent with the Bankruptcy Orders entered by the Bankruptcy Court, including the initial Petition for Relief for Bankruptcy protection, the automatic stay, and the Discharge Order.

98. However, F&M either reported or caused to be reported inaccurate information after the Bankruptcy was filed on Plaintiff's credit reports.

99. F&M attempted to collect upon their respective Debt by reporting post-Bankruptcy derogatory information on Plaintiff's credit report(s), that was inconsistent with the Bankruptcy Orders and terms of the Parties' $5,000 Settlement, which is an illegal collection activity, was therefore inaccurate and materially misleading under the FCRA/CCCRAA and even prohibited by the automatic stay and discharge.

100. F&M's reporting of post-Bankruptcy derogatory information was inaccurate in that F&M continued reporting information based on F&M's pre-bankruptcy contract terms with the Plaintiff, which were no longer enforceable upon the bankruptcy filing and ultimate settlement of the Debt, thereby rendering the disputed information inaccurate and materially misleading.

///

///

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

101. F&M's reporting of post-Bankruptcy derogatory information was also inaccurate because a default on an account included in a bankruptcy can occur no later than the bankruptcy filing date, at which point the accounts included in the Bankruptcy were no longer legally collectable in their pre-Bankruptcy form due to the effect of the automatic stay, settlement of the Debt (in this case), and successful discharge. Thus, by reporting post-Bankruptcy derogatory information, F&M made Plaintiff's pre-Bankruptcy Debt appear more recently subject to collection than it really was, which is inaccurate and materially misleading.

102. For decades, courts have recognized that when a bankruptcy discharge is granted, the order relates back to the date of filing the petition and relieves the debtor from personal liability as of this date.

103. This is because when a debtor voluntarily files for bankruptcy, the petition constitutes an "order for relief" under the particular chapter the debtor wishes to proceed per Bankruptcy Code 11 U.S.C. § 301(a)-(b).

104. When a debtor such as Plaintiff files a chapter 7 petition, Section 727(b) of the Bankruptcy Code provides that the discharge, when entered, applies to "all debts that arose *before the date of the order for relief*." In other words, the discharge relieves the debtor of personal liability for all prepetition debts.

105. Thus, in relation to the FCRA and CCCRAA, the discharge order rendered the information reported by F&M during the pendency of the bankruptcy and post-discharge was inaccurate and patently misleading because the discharge order relieved Plaintiff from any personal obligation to pay F&M as of the date of filing the Bankruptcy petition—May 24, 2013.

106. Essentially, creditors are precluded from reporting account balances and delinquency notes on a consumer's credit report anytime after a bankruptcy is filed, due to the effect of the automatic stay and discharge order.

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

107. Even if reporting debts in their pre-bankruptcy form as delinquent during the life of Plaintiff's payments pursuant to the payment terms described above was accurate, which it was not, failing to report payments made to F&M by Plaintiff every month, was also inaccurate and materially misleading because doing so would lower the amount of the Debt owed even in its pre-bankruptcy form.

108. Moreover, the post-Bankruptcy derogatory, delinquent information furnished by F&M after Plaintiff filed the Bankruptcy was inaccurate and materially misleading because end users, including potential creditors, would interpret delinquencies on accounts after Plaintiff filed for the Bankruptcy and post-discharge to mean that Plaintiff was being noncompliant with his settlement payment obligations to F&M, and the adversary action against him and Debt owed was still outstanding, rather than resolved.

109. The Consumer Data Industry Association's ("CDIA") Metro 2 format is the credit industry's standardized, objective reporting format used by furnishers to provide information about consumer accounts to consumer reporting agencies.[4]

110. Upon information and belief, Defendants have adopted the *Metro 2 Format Manual* as its standard instruction book in respect to credit reporting.

111. The CDIA Metro 2 format instructs credit furnishers, including F&M, to report the following way for consumers, like Plaintiff, after the Chapter 7 Bankruptcy has been filed: (1) report the value indicator "D" or "no data" in the payment history section during a bankruptcy, rather than delinquencies or obligations owing; (2) report the CII status of the account as "Petition for Chapter 7 Bankruptcy", rather than the account status as it *would have* existed in the months following the filing of the Bankruptcy Petition if the Bankruptcy Petition had not been filed (e.g. "120+ days delinquent" or "charged off").

---

[4] *See* Consumer Financial Protection Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System, available at: http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf

112. Further, the CDIA Metro 2 format instructs credit furnishers, including F&M, to report the following way for consumers like Plaintiff who received Chapter 7 bankruptcy discharges: (1) report the value indicator "D" or "no data" in the payment history section, rather than delinquencies or obligations owing; (2) report the CII status of the account as "Discharged through BK Chapter 7", rather than the account status as it *would have* existed in the months following the filing of the Bankruptcy Petition if the Bankruptcy Petition had not been filed (e.g. "120+ days delinquent" or "charged off").; and (3) "Note: After reporting the account with a Discharged CII, discontinue reporting the account."

113. Upon information and belief, Plaintiff alleges that Defendants voluntarily choose to choose to subscribe to the Metro 2 format in their credit reporting practices to credit reporting agencies, but did not comply with the Metro 2 reporting standards in respect to Plaintiff's accounts.

114. End users, including potential creditors, would have thus expected Defendants to report in compliance with the Metro 2 format.

115. Potential creditors familiar with Defendants' standard credit reporting methods would be misled by seeing Defendants reporting derogatory delinquencies in respect to the Debt to believe that Plaintiff incurred new debt during the Bankruptcy or that Plaintiff reaffirmed the debt notwithstanding the discharge because Defendants' reporting deviated from Metro 2 reporting instructions in these respect.

116. However, Plaintiff did not incur new debt with F&M during the Bankruptcy proceeding or reaffirm the Debt in the Bankruptcy.

///

///

///

///

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

117. Rather, Plaintiff reached the Settlement with F&M to reduce his non-discharged obligation for the Debt to $5,000, which was confirmed by the Bankruptcy Court. Plaintiff proceeded to pay off the non-discharged obligation to F&M, which was acknowledged by F&M when they filed a Notice of Satisfaction of the paid off Debt in Bankruptcy Court. Accordingly, the Debt was satisfied and any balance above $5,000 purportedly owed to F&M in its pre-Bankruptcy form was discharged in Plaintiff's Bankruptcy.

118. Accordingly, by reporting post-Bankruptcy delinquent and derogatory information, Defendants did not comply with the Metro 2 format.

119. Furnishers and credit bureaus utilizing the Metro 2 reporting standard correctly is crucial because the Metro 2 system creates a uniform standard for the meaning given to each field provided, which fosters consistency in how furnishers formulate data to report to the credit bureaus, which ultimately leads to objective credit evaluations and scores for consumers.

120. Moreover, the FCRA and CCCRAA impose no requirement or mandate that a furnisher provide any information to a consumer reporting agency. Indeed, the CDIA has repeatedly noted that the act of furnishing information to a consumer reporting agency is completely voluntary.[5]

121. Accordingly, once Plaintiff filed the Bankruptcy, F&M was required to report accurately to the CRAs or not report Plaintiff's account at all.

122. Accordingly, F&M's non-compliance with the Metro 2 reporting standards constitutes an inaccurate and materially misleading statement under the FCRA and CCCRAA, because a furnisher that fails to comply with the uniform and objective Metro 2 reporting standards compromises the credit reporting system.

---

[5] *See, e.g.,* Credit Reports: Consumers' Ability to Dispute and Change Inaccurate Information: Hearing Before the H. Comm. on Fin. Serv., 110 Congr. 50 (2007) (written statement of Stuart Pratt, President and CEO, Consumer Data Industry Association) ("not a single one of the more than 18,000 data furnishers has to provide a single record of data to our members").

123. Because credit reporting is a voluntary act, F&M's deviation from the Metro 2 format instructions—the industry standard and their respective chosen method of reporting—constitutes an inaccurate or misleading statement. This is because those making credit decisions, who would expect that furnishers like F&M would adhere to the Metro 2 format, would view the reporting of accounts included in the Bankruptcy in their delinquent pre-bankruptcy form of being "charged off" more negatively than reporting that any remaining unsettled balance on the Account was discharged in Plaintiff's Bankruptcy.

124. In other words, F&M's failure to adhere to the Metro 2 format would prompt those making credit decisions to draw a more negative inference from F&M's reporting and, in turn, be less likely to approve Plaintiff for an extension of credit.

125. Plaintiff subsequently learned that Defendants reported post-Bankruptcy derogatory credit information regarding the obligations on Plaintiff's credit reports, thereby causing erroneous and negative credit information in Plaintiff's credit files and damaging Plaintiff's creditworthiness.

126. As a direct and proximate result of Defendants' willful and untrue communications, Plaintiff has suffered actual damages including, but not limited to, being denied for an extension of credit from Chase, reviewing credit reports, mailing dispute letters, incurring attorney's fees, and such further expenses in an amount to be determined at trial.

127. As a further direct and proximate result of Defendants' acts stated herein, Plaintiff incurred pain and suffering, was impeded in seeking necessary products and services from vendors, suffered humiliation, embarrassment, anxiety, loss of sleep, emotional distress, and defamation of character.

///

///

///

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

### F&M INACCURATE AND MATERIALLY MISLEADING CREDIT INFORMATION RE: ACCOUNT NO.: 462990300001…

128. In an Experian Credit Report dated November 23, 2016, F&M reported the following inaccurate, derogatory information for the above-referenced account number, as of November 2016:

- Status: Paid, Closed. $10,313 *written off*
- "CO" (i.e. Charge-Off) *status* Notations August 2013 to October 2016.
- Account Balances of $10,983 to $13,389 between November 2014 to October 2016.

129. There was no notation, status update, or any other indication in the tradeline as it was reported to Experian that this F&M account was included in or discharged in Plaintiff's Bankruptcy.

130. Again, any amount of F&M's Debt not settled with Plaintiff in the Adversary Action was included in and discharged in Plaintiff's no-asset Bankruptcy.

131. F&M should not have reported derogatory information on Plaintiff's account after May 24, 2013 because Plaintiff filed for bankruptcy on May 24, 2013.

132. Again, the derogatory, delinquent information furnished by F&M during the pendency of the Bankruptcy and after discharge were inaccurate and materially misleading because it suggests that the account was still collectable during and after the bankruptcy, even though the bankruptcy discharge related back to the date Plaintiff filed for bankruptcy.

133. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

134. Again, Plaintiff settled the non-dischargeable portion of F&M's Debt for $5,000 through a $1,000 payment by December 31, 2013 and paid off the remaining balance of $4,000 through monthly installments of $100 per month, which was paid in full sometime before October 17, 2016, which was when F&M filed a Notice of Satisfaction of Judgment with the Bankruptcy Court.

135. Accordingly, if F&M chose to continue reporting on Plaintiff's credit reports, F&M was required to report accurately according to Plaintiff's participation in the payment plan Settlement described above.

136. Yet F&M failed to accurately report according to Plaintiff's participation and payments stemming from the Settlement, making F&M's reporting inaccurate and materially misleading under the FCRA and CCCRAA.

137. On the contrary, F&M reported an amount "Charged Off"/written off of $10,313, as opposed to reporting that Plaintiff paid F&M $5,000 of the $10,313 amount and the remaining balance was discharged in Plaintiff's Bankruptcy, which inaccurately and misleadingly suggested that Plaintiff still has a personal legal liability to pay the alleged Debt to F&M, which is the opposite effect of Plaintiff receiving a Chapter 7 bankruptcy discharge.

138. Further, the "Charge Off" status notations by F&M during the life of the Settlement repayment inaccurately and misleadingly suggested that Plaintiff was being delinquent on his payment obligations under the Settlement to F&M, which was not true.

139. Moreover, F&M *accurately* reported to Equifax that the Debt was discharged in Plaintiff's Bankruptcy, yet chose to report inaccurately to Experian.

140. F&M's credit reporting information is relevant to Plaintiff's credit score, and F&M's inaccurate reporting is materially misleading and therefore adversely affects Plaintiff's creditworthiness.

141. Therefore, F&M's inaccurate, materially misleading, and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

142. Through this conduct, F&M has violated Cal. Civ. Code § 1785.25(a) by furnishing information to Experian, i.e. a consumer reporting agency, that F&M knew or should known was inaccurate and materially misleading.

143. Experian reported the Bankruptcy in its "Public Records" section of Plaintiff's credit report. Therefore, Experian had notice of the Bankruptcy.

144. Moreover, Experian had notice of the Bankruptcy due to multiple other accounts reporting in Plaintiff's credit reports notating the Bankruptcy.

145. However, even with notice of the Bankruptcy, Experian allowed F&M to report the above inaccurate and derogatory information, for debts that was included and discharged in the Bankruptcy, after Plaintiff filed the Bankruptcy.

146. Therefore, Experian's inaccurate and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful, especially in light of their aforementioned class action settlement.

147. Experian's credit reporting information is relevant to Plaintiff's FICO credit score, and Experian's inaccurate reporting is materially misleading and therefore adversely affects Plaintiff's creditworthiness.

148. Therefore, Experian's inaccurate and negative reporting of the Debt in light of their knowledge of the Bankruptcy was willful.

149. Accordingly, Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b).

150. On or about February 2017, Plaintiff disputed F&M's reported information regarding the Debt pursuant to 15 U.S.C. § 1681I(a)(2) by notifying Experian, in writing, of the incorrect and inaccurate credit information furnished by F&M.

151. Specifically, Plaintiff sent letters, via certified mail, to Experian (the "Dispute Letter"), requesting the above inaccurate information be removed.

152. The Dispute Letter further requested that Experian:

- Immediately delete the disputed derogatory information from my credit report and update my credit report accordingly.

- If you do not immediately correct the disputed information on my credit report, please include the "Consumer Dispute" section above as my dispute statement for this account on my credit report.

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

153. Upon information and belief, Experian timely notified F&M of Plaintiff's dispute, but F&M continued reporting inaccurate, derogatory information.

154. Experian was required to conduct a reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

155. F&M was required to conduct a reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

156. On or about February 22, 2017, Plaintiff received notification from Experian that F&M and Experian received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6) and were providing the results of the reinvestigation.

157. However, rather than remove the above derogatory information from Plaintiff's report, F&M and Experian simply left derogatory information on Plaintiff's report. Specifically, F&M and Experian continued to report the following inaccurate and derogatory information on Plaintiff's credit:

   • Status: Paid, Closed. $10,313 *written off*
   • "CO" (i.e. Charge-Off) *status* Notations August 2013 to October 2016.
   • Account Balances of $10,983 to $13,389 between November 2014 to October 2016.

158. Experian did not provide notice to Plaintiff that his dispute was "frivolous or irrelevant," pursuant to 15 U.S.C. § 1681i(a)(3).

159. As discussed above, included in the Experian Dispute Letter was Plaintiff's statement of dispute, pursuant to 15 U.S.C. § 1681i(b).

160. However, despite Experian never notifying Plaintiff that her dispute was "frivolous or irrelevant," they failed to notate that Plaintiff disputed the above reporting in their subsequent reporting, as required by 15 U.S.C. § 1681i(c).

///

///

///

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

161. Moreover, upon information and belief, Experian's reinvestigation was unreasonable. More specifically, Experian should have discovered from its records, including Plaintiff's official dispute letter, that the information F&M was reporting was inaccurate and materially misleading. Experian could have easily ascertained that the F&M account was paid off and discharged by reviewing the publically available bankruptcy records discussed above or even requesting Plaintiff's payment records from F&M.

162. Accordingly, Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff and violated 15 U.S.C. § 1681e(b).

163. Accordingly, Experian failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. §1681i.

164. Upon information and belief, F&M's investigation was also unreasonable. More specifically, F&M should have discovered from its records, including Plaintiff's official dispute letter and payment records, that the information F&M was reporting was inaccurate and materially misleading. Specifically, F&M could have simply reviewed their payment records and the bankruptcy records discussed above and recognized that Plaintiff paid off the disputed account and any purported remaining balance beyond the Settlement was discharged in Plaintiff's Bankruptcy, not "written off" or "charged off", and that Plaintiff was not delinquent in his payment obligations under the Settlement.

165. Moreover, F&M failed to provide notice of dispute to Experian as required by 15 U.S.C. §1681s-2(a)(3).

166. Accordingly, F&M failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) by:

   a. Failing to remove all of the disputed and incorrect information, and

   b. Failing to notate, as required, Plaintiff's dispute.

167. F&M and Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian as required by and in violation of 15 U.SC. § 1681s-2(b)(1)(B).

168. Due to F&M and Experian's failure to reasonably investigate, they each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

169. Plaintiff's continued efforts to correct F&M and Experian's erroneous and negative reporting of the Debt by communicating Plaintiff's dispute with F&M and Experian were fruitless.

170. F&M and Experian's continued inaccurate and negative reporting of the Debt in light of its knowledge of the actual error was willful.

171. F&M and Experian's failure to correct the previously disclosed inaccuracies on Plaintiff's credit report was intentional and in reckless disregard of its duty to refrain from reporting inaccurate information. Accordingly, F&M and Experian willfully and negligently failed to comply with its duty to reasonably investigate Plaintiff's dispute.

172. F&M and Experian's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

173. By inaccurately reporting account information relating to the Debt after notice and confirmation of its errors, F&M and Experian failed to take the appropriate measures as determined in 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E).

///
///
///
///
///
///

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE FAIR CREDIT REPORTING ACT

### 15 U.S.C. §§ 1681 ET SEQ.

### [AGAINST ALL DEFENDANTS]

174. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

175. The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA, including, but not limited to, each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681.

176. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

177. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

### COUNT II

### VIOLATION OF CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT

### CAL. CIV. CODE § 1785.1 ET SEQ.

### [AGAINST F&M ONLY]

178. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

179. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

180. In the regular course of its business operations, Defendants routinely furnish information to credit reporting agencies pertaining to transactions between Defendants and Defendants' consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

181. Because Defendants are partnerships, corporations, associations, or other entities, and are therefore each a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Defendants are and always were obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if they knew or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a). Defendants knew or should have known that Plaintiff's debt was discharged. Thus, Defendants violated Cal. Civ. Code § 1785.25(a).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants:

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against Defendants for each incident of willful noncompliance of the FCRA;

- An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against Defendants for each incident of willful noncompliance to the FCRA;

- An award for costs and reasonable attorney's fess, pursuant to 15 U.S.C. § 1681n(a)(3), against Defendants for each incident of negligent noncompliance of the FCRA;

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA;

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101

- An award of costs and litigation and reasonable attorney's fees pursuant 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2) against Defendants for each incident of noncompliance of the FCRA;
- An award of actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(2)(A), against Defendants;
- Award of attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d) against Defendants;
- An award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) against Defendants;
- For equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b) against Defendants;
- Any and all other relief the Court deems just and proper.

Dated: March 20, 2017                    Respectfully submitted,

                                         LAW OFFICE OF CLARK OVRUCHESKY


                                         By: /s/ Clark Ovruchesky
                                             CLARK OVRUCHESKY, ESQ.
                                             ATTORNEY FOR PLAINTIFF

### TRIAL BY JURY

182. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.


Dated: March 20, 2017                    Respectfully submitted,

                                         LAW OFFICE OF CLARK OVRUCHESKY

                                         By: /s/ Clark Ovruchesky
                                             CLARK OVRUCHESKY, ESQ.
                                             ATTORNEY FOR PLAINTIFF

LAW OFFICE OF CLARK OVRUCHESKY
750 B. STREET, SUITE 3300
SAN DIEGO, CA 92101